1 | PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNEER TAWAM, <br><br> Plaintiff, <br><br> v. <br><br> LIVE NATION WORLDWIDE, INC., a Delaware corporation and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 3:23-cv-00392-RBM-BGS <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Filed: January 25, 2023 <br> Removed: March 2, 2023 <br> Trial Date: None Set |

## I.  INTRODUCTION

1. Whenever someone watches a video on www.onestowatch.com (the "Website"), Defendant Live Nation Worldwide, Inc. ("Defendants") secretly reports all the details to Facebook: the visitor's personally identifiable information ("PII"), the titles watched, and more. Why? Data harvesting and targeted advertising.

2. As shown below, Defendants' actions violate the Video Privacy Protection Act of 1988, 18 U.S.C. §§ 2710 *et seq*. ("VPPA").  As such, Defendants are liable to Plaintiff Muneer Tawam ("Plaintiff") and each Class member for statutory damages, an injunction, and related relief.

## II.  JURISDICTION AND VENUE

3. Plaintiff does not dispute Defendants' grounds for removal to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

## III.  PARTIES

4. Plaintiff is an individual and a consumer advocate.  Plaintiff played the "Who Is Warren Hue?" video offered on Defendants' Website on or about January 11, 2023.

5. Defendant Live Nation Worldwide, Inc. is a Delaware corporation with its principal place of business located in Beverly Hills, California.  Defendant Live Nation Worldwide, Inc., along with its affiliates and agents, are collectively referred to as "Defendants."

6. Defendants own, operate, and or control the Website, which is an American music blog primarily aimed at showcasing new talent.  The Website offers artist profiles, playlists, tour information, a blog, and music videos.

7. The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of

the DOE Defendants when such identities become known.

## IV. FACTUAL ALLEGATIONS

### A. THE FACEBOOK TRACKING PIXEL

8. Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1]

9. To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

10. Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3] Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

11. Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

12. The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited January 2023).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited January 2023).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https:/www.facebook.com/business/help/20502906038706 (last visited January 2023).
[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited January 2023).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited January 2023).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764 94 (last visited January 2023); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=246909795337 6494 (last visited January 2023).
[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.

assimilates into the Custom Audiences dataset.

13. Advertisers control what actions — or, as Facebook calls it, "events" — the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

14. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

**B.   DEFENDANTS ARE A "VIDEO TAPE SERVICE PROVIDER" UNDER THE VPPA.**

15. Defendants are engaged in the business of "rental, sale, *or delivery of* prerecorded video cassette tapes *or similar audio visual materials*." 18 U.S.C. § 2710(a)(4) (emphasis added). Specifically, Defendants' business model involves monetizing instances in which consumers watch videos on the Website.

16. Consistent with its business model of monetizing videos, the Website hosts and delivers content including videos.

**FIGURE 1**

---

[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited January 2023).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited January 2023).
[10] *Id.*
[11] *Id.*



## C. DEFENDANTS DISCLOSE PII TO FACEBOOK.

17. The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

18. Here, Defendants disclose information which allows Facebook (and any ordinary person) to identify a user's video-watching behavior.

**FIGURE 2**

FIRST AMENDED CLASS ACTION COMPLAINT

3:23-cv-00392-RBM-BGS



19. Defendants have configured the PageView event to transmit the Universal Resource Locator ("URL") and the category of content selected. For example, Defendants disclose a webpage's URL.

**FIGURE 3**



20. Microdata discloses the video's title and other descriptors.

**Figure 4**

{"title":"Who Is Warren Hue?","meta:description":"Meet the 88rising-backed hometown hero turned international sensation."}

21. The aggregate pixel events (Page View and Microdata Automatically Detected) permit an ordinary person to identify a video's content, title, and location.

22. When a visitor watches a video on the Website while logged into Facebook, Defendants compel a visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, Defendants compelled the browser to send eight cookies.

**FIGURE 5**

| Name | Value | Domain |
| --- | --- | --- |
| presence | C%7B%22t3%22%3A%5... | .facebook.com |
| fr | 0guCJWgHtnQ5r9aft.AWV... | .facebook.com |
| c_user | 100087271304389 | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| dpr | 2 | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qH... | .facebook.com |
| wd | 1186x721 | .facebook.com |
| xs | 13%3Ad4tNgn_yfHV4uQ%... | .facebook.com |

23. When a visitor's browser has recently logged out of Facebook, Defendants will compel the browser to send a smaller set of cookies:

**FIGURE 6**

| Name | Value | Domain |
|------|-------|--------|
| fr | 0guCJWgHtnQ5r9aft.AWV… | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| dpr | 2 | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qH… | .facebook.com |
| wd | 1186x721 | .facebook.com |

24. The fr cookie contains an encrypted Facebook ID and browser identifier.[12] The datr cookie also identifies a browser.[13] Facebook, at a minimum, uses the fr cookie to identify particular users.[14]

25. The _fbp cookie contains, at least, an unencrypted value that uniquely identifies a browser.[15] As with the fr cookie, Facebook uses the _fbp cookie to identify users.

**FIGURE 7**

| Name | Value | Domain |
|------|-------|--------|
| _fbp | fb.1.1676505587241.4775… | .onestowatch.com |

26. The Facebook Tracking Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e.,

---

[12] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v facebook.org/ODPC_Review.pdf (last visited January 2023).
[13] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited January 2023).
[14] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited January 2023).
[15] FACEBOOK, CONVERSION API, https://developers.facebook.com/docs/marketingapi/conversions-api/parameters/fbp-and-fbc/ (last visited January 2023).

onestowatch.com.[16] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook.[17] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

27. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

28. A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

29. Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what onestowatch.com videos a user has watched.[18]

30. By compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

31. By compelling a visitor's browser to disclose the fr and _fbp cookies alongside event data for videos, Defendants knowingly disclose information sufficient to permit an ordinary person to identify a specific individual's video viewing behavior.

---

[16] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited January 2023). This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[17] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie (last visited January 2023). This is also confirmable by tracking network activity.
[18] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited January 2023).

32. Facebook confirms that it matches activity on the Website with a user's profile. Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[19] The off-site activity report confirms that Defendants identify an individual's video viewing activities.

**D.  PLAINTIFF IS A "CONSUMER" UNDER THE VPPA.**

33. The VPPA defines the term "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1).

34. Aside from browsing Defendants' Website and reviewing their services, Plaintiff downloaded Defendants' app after playing the "Who Is Warren Hue?" video on the Website. As such, Plaintiff is a "consumer" under the VPPA.

35. Plaintiff has downloaded Defendants' mobile device application onto Plaintiff's smartphone device, which established Plaintiff's seamless access to Defendants' Website. Therefore, Plaintiff is also a "subscriber" of goods or services from a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(1). *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487-90 (1st Cir. 2016).

36. Plaintiff is a consumer privacy advocate with dual motivations for watching a video on Defendants' Website. First, Plaintiff was genuinely interested in learning about and experiencing the services offered by Defendants on their Website. Second, Plaintiff is a "tester" who works to ensure that companies abide by the obligations imposed by federal law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

37. Congress deliberately chose to extend its protections to a "consumer" even

---

[19] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited January 2023).

if such consumer is not a "purchaser" of the goods or services of a "video tape service provider". *Yershov*, 820 F.3d at 487 ("Congress would have had no need to include a third category of persons protected under the Act if it had intended that only persons who pay money for videos be protected, which militates against an interpretation of the statute incorporating such an element."). As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing why plaintiffs who enforce consumer protection and civil rights statutes need not demonstrate monetary damages or even mental distress in order to suffer an Article III injury in fact).

38. When Plaintiff played the video on the Website, Defendants disclosed event data, which recorded and disclosed the video's title, description, and URL, to Facebook. Alongside this event data, Defendants also disclosed identifiers for Plaintiff, including the c_user and fr cookies. In other words, Defendants did exactly what the VPPA prohibits: they disclosed Plaintiff's video viewing habits to a third party.

39. Visitors would be shocked and appalled to know that Defendants secretly disclose to Facebook all of the key data regarding a visitor's viewing habits.

40. Defendants' conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

41. By disclosing Plaintiff's event data and identifiers to Facebook, Defendants knowingly disclosed Plaintiff's PII to a third-party.

### V. Class Allegations

42. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on the Website and whose PII was disclosed by Defendants to Facebook during the Class Period.**

43.   **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendants' Website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

44.   **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a)   whether Defendants collected Plaintiff's and the Class's PII;

   b)   whether Defendants unlawfully disclosed and continues to disclose their users' PII in violation of the VPPA;

   c)   whether Defendants' disclosures were committed knowingly; and

   d)   whether Defendants disclosed Plaintiff's and the Class's PII without consent.

45.   **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used onestowatch.com to play videos, and had PII collected and disclosed by Defendants.

46.   **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

47.   **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if

every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI.     CAUSE OF ACTION

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

### 18 U.S.C. § 2710 *et seq.*

48.     Defendants are "video tape service providers" that create, host, and deliver videos on the Website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Defendants also use the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

49.     Plaintiff and members of the Class are "consumers" because they have played videos on the Website. 18 U.S.C. § 2710(a)(1).

50.     Defendants disclosed to a third party, Facebook, Plaintiff's and the Class members' PII. Defendants utilized the Facebook Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like his Facebook ID, along with Plaintiff's event data, like the title of the videos he played.

51.     Plaintiff and the Class members viewed videos using onestowatch.com.

52.     Defendants knowingly disclosed Plaintiff's PII because it used that data to build audiences on Facebook and retarget them for its advertising campaigns.

53. Plaintiff and Class members did not provide Defendants with any form of consent—either written or otherwise—to disclose their PII to third parties.

54. Defendants' disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants, individually and on behalf of all others similarly situated, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b. For an order declaring that Defendants' conduct violates the VPPA;

c. For an order finding in favor of Plaintiff and the Class on all claims asserted herein;

d. An award of statutory damages under the VPPA;

e. An award of punitive damages;

f. For prejudgment interest on all amounts awarded;

g. For injunctive relief to stop the illegal conduct; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs reasonably incurred.

Dated: March 10, 2023

PACIFIC TRIAL ATTORNEYS
A Professional Corporation

By: _____
Scott J. Ferrell
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counCENTRAL sel of record.

/s/ *Scott J. Ferrell Esq.*
Scott J. Ferrell, Esq.